## BAGLEY vs. EATON, ADM.[*]

*Fourth Judicial District Court, September*, 1857.

LOST NOTE—AFFIDAVITS—EVIDENCE.

Affidavits as evidence of the loss or destruction of a note are received upon the ground that they are preliminary and incidental, addressed solely to the court and not affecting the issue to be tried by the jury.

Where the foundation for the introduction of secondary evidence to prove the contents of a lost note, is laid by the introduction of the affidavits of interested parties, the case must be proven before the jury by primary or secondary testimony, as fully as if the affidavits had not been introduced.

When the affidavits disclose that the plaintiff deliberately and voluntarily destroyed the note, he must, by affirmative testimony, give some explanation of the act, consistent with an honest or justifiable purpose, to rebut the inference of its extinguishment: without any explanation he cannot recover.

The facts are fully stated in the opinion. On motion for a new trial.

*Hoge & Wilson*, for plaintiff.

*Glassell & Leigh*, for defendant.

HAGER, J.—The action is against the administrators of the estate of G. C. McMickle, deceased, to recover the amount of three promissory notes, alleged to have been made by deceased, March 22d, 1851,

---

[*] See ante p. 185.

to the firm of Bagley & Sinton. This motion is principally based on the ground that the court erred in charging the jury.

On the trial, in order to account for the non production of the notes, and to lay the foundation for introducing secondary evidence of their contents, the plaintiff read to the court his own and his co-payee, Sinton's, affidavit, in which they substantially depose to the making of the notes, and that they remained in the possession of Bagley & Sinton until after maturity, when, upon the solicitation of McMickle, the affiants consented that they might be destroyed, in order to satisfy him that they would not be negotiated or passed into the market, or the hands of some    er party, and that they were then, about the fifteenth of August, 1852, torn up and destroyed, with the consent, and in the presence of, Bagley & Sinton.

The plaintiff then gave in evidence a bond, of March 22d, 1851, from Bagley & Sinton to McMickle, in which it is recited to the effect that on or about the first of May, 1850, Bagley & Sinton sold to Mc-Mickle, for the sum of $14,000, a lot of ground, which is described, and that McMickle paid of the amount the sum of $8,420, leaving a balance due, which, with the interest, amounted to $6,580, for which McM. executed three notes of the same date as the bond, "one being for the sum of $2,000, payable thirty days after date; another for a like sum of $2,000, payable sixty days after date, and the third and last for the sum of $2,580, payable ninety days after date, each and all bearing interest at the rate of five per cent. per month from date," and followed by a condition to the effect, that if McM. well and truly pays the notes at maturity, then B. & S. are to execute a deed to McM. for the lot of ground; and if McM. makes default in the payment of any one or all of the said notes, then he is to forfeit all right or interest in the lot, and B. & S. are authorised to dispose of it, discharged of all claim or pretense of claim, or interest of McM., as they may see fit.

It is alleged in the complaint, and not denied, that McMickle died in ——, 1854, and it was proven that Bagley & Sinton, on the fifth day of January, 1855, presented to one of the administrators of Mc-Mickle an account, claiming payment of the amount due upon the contract and notes, which was rejected by the administrator.

On the fifth day of April, Sinton, by writing, assigned his interest

in the bond, notes, and claim agaist the estate, to the plaintiff, Bagley. In the account presented to the administrator it is in substance stated, that the lot was purchased for $14,000, on which was paid $8,420, leaving a balance, with the interest, of $6,580, for which notes were given, drawing interest, as is recited in the bond; then of the date of June 4th, 1851, McMickle is credited by the proceeds of the sale of the property, "under power of sale from said McMickle, $3,000," and the balance af principal and interest is claimed to be due, which, in the aggregate, now amounts to something over $20,000.

Upon these proofs the plaintiff rested, and the defendant went to the jury upon the same evidence, and asked the court to instruct them that the testimony was insufficient to support a verdict, for any sum, in favor of the plaintiff; when the court in substance charged the jury as is set forth in the statement on this motion.

In consideration of the fact that this case has already been twice before the Supreme Court, although upon a different statement of facts from that in which it is now presented, I have taken some pains to carefully consider and examine the law applicable to actions upon lost notes.

In England the doctrine appears to be established that there is, and should be, no remedy *at law* for the holder of a negotiable note which has been lost, to recover the contents from any antecedent party on the note, whether he is the maker or endorser; but that the sole remedy is, and should be, in equity, where the relief will be granted upon the holders proving the loss, and giving a suitable bond of indemnity.

In the United States, unless there are statutory regulations on the subject, there has been much diversity of judicial opinion. In some of the States, the English doctrine has been maintained in the affirmative, in others it has been held in the negative, and again in others the holder has been allowed to sue at law, if he executes a suitable instrument of indemnity. Kent and Story seem to think that the weight of authority is in favor of the exclusive remedy in equity. The same doctrine is extended to cases of demands for payment, and upon actual payment being made, the note should be surrendered, or if lost indemnity against a second payment must be given or tendered. Hansard vs. Robinson, 7 Barn. & Cress., 90; Story on Promissory Notes, §§106–112, 244, 445, 446; 3 Kent's Com., 114, 115, and note (*d*); 2 Gr.

Ev., §156, and note (8); 1 Gr. Ev., §558, and notes, and the numerous authorities cited by these commentators.

And it is said to make no difference as to the rule of law if the note is so old that the statute of limitations has attached upon it. 3 Phil. Ev., 7; Bailey on Bills, 299; Story on Prom. Notes, §449, and note (1).

There is a recognised distinction in some of the authorities between cases where the document is, and those in which it is not, the foundation of the action in regard to the admission of secondary evidence of its contents. In some instances, where it is merely auxiliary to the action, strict proof of loss has not been required, and even where it is the foundation of the action the rules of evidence, in proving the loss or destruction, are not universally settled. Persons interested in the action, and the parties themselves, have sometimes been held competent witnesses, or their affidavits have been admitted in regard to facts and circumstances necessary to lay the foundation of secondary evidence; but perhaps an equal number of cases may be found maintaining the opposite doctrine. The numerous authorities will be found collated in 2 Part of Cowen & H., notes to Phil. Ev., 408.

The affidavit of the party, as evidence of loss or destruction of the instrument, has been received upon the ground that it is preliminary and incidental, addressed solely to the court, and not affecting the issue to be tried by the jury; but they are restricted to the question of loss, and are not allowed for the purpose of disclosing the contents of the lost instrument, and should not be received at all if other testimony is attainable. If the party making the affidavit is competent to testify generally in the cause, he must be sworn and examined as an ordinary witness, that the advantage of a cross-examination may be preserved. When the foundation for secondary evidence is laid, the case must be proven before the jury by primary or secondary testimony, as fully as if the affidavits had not been introduced. Mason vs. Tallman, 34 Me. R., 472; Davis vs. Black, 5 Smedes & Marshall, 226; Adams vs. Leland, 7 Pick. R., 62; Donalson vs. Taylor, 8 Pick. R., 390; Pomard vs. Smith, 8 Pick. R., 272, 278; Marshall, C. J., in Taylor vs. Riggs, 1 Pet. R., 591, 596–7; 16 John. R, 193, 195–6; Bun vs. Knen, 7 Black. R., 152.

It is not as a matter of course that a party is allowed to introduce

secondary evidence, even when he brings direct proof of the fact of destruction or loss. If the destruction was accidental, or done through mistake, or under an erroneous impression that the paper was of no use or value, secondary evidence would be allowed ; but if a party voluntarily and willfully destroys his primary evidence, through carelessness, or for any fraudulent purpose, he excludes himself from the benefit of secondary evidence ; and sometimes the facts and circumstances connected with the destruction have been submitted to the jury, to be passed upon by them in considering their verdict. Cowen & Hill's notes to Phil. Ev., 2d Part, 406 ; The Bank of the U. S. vs. Hill, 5 Conn. R., 111 ; Page et al. vs. Page, 15 Pick. 5., 368 ; Blade vs. Noland, 12 Wend. R., 173 ; Garlock vs. Geortner, 7 Wend. R., 198 ; 9 Whea. R., 483, 487 ; ib. 596.

I will refer more fully some of the cases most pertinent and analagous, in principle and facts, to the one under consideration.

In the case of U. S. Bank vs. Hill, 5 Conn. R., the court say, " when the holder of a bill voluntarily and intentionally destroys it, or alters it fraudulently, he has no remedy ; but if he loses, cancels, alters, or destroys it by accident or mistake, his rights are not affected ; his evidence only is impaired. A bill or note is not a debt, it is only primary evidence of a debt, and when this is lost, impaired, or destroyed *bona fide*, it may be supplied by secondary evidence."

Page et al. vs. Page, 15 Pick. This was an action by executors on a note, by defendant payable to the testator. After the plaintiffs, by the affidavit of one of them, had proven the loss of the note sufficiently satisfactorily to the court to admit secondary evidence, they then gave evidence tending to show that after the death of the testator defendant admitted that *he had the note in his possession*, stating the date and amount, and acknowledged that it was then due, and he was ready to pay it when an executor was qualified and ready to receive it. These points were controverted, and it was left to a jury to determine the facts. The trial was before Ch. J. Shaw, who, in his instructions to the jury, remarked that ordinarily the non-production of a note by a party claiming under it, raised a presumption of payment; and after commenting on the affidavit, said further ; if the jury should be of the opinion that the note was not paid to the testator, but remained in the custody of the defendant at the time of the testator's decease, this

Bagley vs. Eaton, Adm.

would rebut such presumption of payment. The rulings and judgment in the case were sustained by the Supreme Court of Massachusetts.

On the trial of the present suit the plaintiff relied upon the case just referred to, as an authority to sustain his action. The facts of that case are somewhat analogous to the one under consideration, except in one important particular : there, besides the affidavit, plaintiffs gave testimony to the jury of the defendant's admissions of liability, &c. Here the plaintiff gave no evidence or explanation to the jury to rebut the presumption against him, arising from the voluntary surrender and destruction of the note.

*Garlock* vs. *Geortner*, 7 Wend, 198. Action on a promissory note alleged to have been given under a special agreement, and *to be in the possession of the defendant.*

The case was tried in the court of Common Pleas. Plaintiff proved *the making and delivery*, &c., and called on defendant to produce it, and upon his refusing to do so, offered to prove that the plaintiff, under an impression that defendant was entitled to the possession of the note gave it to him to keep, under a special agreement. The court over ruled the testimony ; plaintiff was nonsuited and carried the case to the Supreme court. Justice Nelson in giving the opinion of the court reversing the judgment says : " The court below erred in refusing to admit the evidence offered to be given. The *execution* and *delivery* of the note by the defendant was proved, and whether it was intended to be given up and relinquished by the plaintiff or not, when put in defendant's possession, should have been submitted to the jury. ⸰ ⸰ The plaintiff should have been allowed, if he could, to explain the possession of the note by the defendant as well to rebut the *prima facie inference of extinguishment of it, as to account for its non-production on the trial.*"

*Blade* vs. *Noland*, 12 Wend, 173. Action on a note alleged to be distroyed or lost.

Plaintiff first proved the making and *delivery* of the note and by his own testimony and that of another witness, showed that he, plaintiff, had *burnt it up*, as plaintiff testified, the next day after it was given. There was also evidence of payment by defendant on account.

Judgment was rendered before a Justice, and in the court of common pleas, for the plaintiff, and the case then went to the supreme court.

Bagley *vs.* Eaton, Adm.

Justice Nelson in delivering the opinion of the court reversing the judgment, says : " The proof is, that plaintiff deliberately and voluntarily destroyed the note before it fell due, and there is nothing in the case accounting for, or affording any explanation of the act, consistent with an honest or justifiable purpose. Such explanation the *plaintiff was bound to give affirmatively,* for it *would be in violation of all the principles upon which inferior and secondary* evidence is *tolerated,* to allow a party the benefit of it who has wilfully destroyed the higher and better testimony.   * * *

" I have examined all the cases decided in this court, where this evidence has been admitted, and in all of them the original deed or writing was lost or destroyed by time, mistake or accident, or was in the hands of the adverse party. Where there was evidence of the actual destruction of it, the act was shown to have taken place under circumstances that repelled all inference of a fraudulent design."   * * After citing authorities and stating the foundation of the rule, he proceeds : " The above is in brief the foundation of the rule in these cases of secondary proof of instruments in writing, and it has been much relaxed and extended in modern times, from necessity and to prevent a failure of justice ; yet I believe no case is to be found where, if a party has deliberately destroyed the higher evidence, *without explanation showing affirmatively* that the act was done with pure motives and repelling every suspicion of a fraudulent design that he has had the benefit of it. To extend it to such a case would be to lose sight of all the reasons upon which the rule is founded, and to establish a dangerous precedent. We know of no honest purpose for which a party, without any mistake or misapprehension, would deliberately destroy the evidence of an existing debt; and we will not presume one. From the necessity and hardship of the case, courts have allowed the party to be a competent witness to prove the loss or destruction of the papers; but it would be an unreasonable indulgence and a violation of the just maxim that " no one shall take advantage of his own wrong, to permit this testimony when he designedly destroyed it."

Now in the case before us, as heretofore stated, the plaintiff by affidavits showed a voluntary destruction of the notes, and then gave in evidence the bond which describes the notes as having been executed.

This is the entire testimony upon this branch of the case. The affidavits being addressed only to the court, *solely* upon the question of the destruction of the primary evidence, there was no evidence before the jury but the bond; which only tends to prove the execution, not the delivery, of the notes described therein.

There was no proof tending to show, that the notes had ever been *delivered* to plaintiffs, or whether or no they were negotiable; or what was their condition, contents or indorsements when they were destroyed; and yet, after plaintiff has been for years quietly sleeping upon his rights, and until the maker of the note is no longer among the living to give an account of the transaction, it is gravely contended that, by the law and upon this evidence, he is entitled to recover some $20,-000 against the estate of the deceased; upon obligatons which, according to his admission before the court, were, some four or five years ago, with his consent, destroyed in a manner and under circumstances that raise against him a presumption—as strong as could be claimed by any party who takes up a note and destroys it—which he has not attempted to explain by testimony. If it should be authoritatively declared that such is the law: that a party, by making affidavit that he has voluntarily destroyed, or allowed the maker to destroy a note, and without disclosing the purpose or furnishing any further explanation, simply upon proof that it was executed to him, is entitled to recover, as upon a lost note, it will afford a summary and convenient mode of getting rid of objectionable conditions, covenants, limitations, &c., in deeds, notes, and other instruments, which it is not unreasonable to suppose the unscrupulous will avail themselves of, and will also render any person who may have paid and discharged his note, liable to be called upon a second time, unless he has taken a receipt, or is prepared to make proof of actual payment.

The danger and mischief to be apprehended from a relaxation of the rules of evidence to this extent, is too apparent to require illustration, and so long as it remains an open question in this State, a regard for the integrity of written contracts, and the protection of the parties thereto, will prevent its being obtained in this court. The doctrine of the cases which I have cited at length, is, in my opinion, sound in reason, principle and policy, and will be adhered to, until the proper tribunal of this State shall declare against it. The law is too clearly against

the plaintiff, as it appears to me, to admit of argument, and the fact that the judgment in the action has been twice reversed in the supreme court, (although no new or different rule of law has been declared ; the reversal having been based upon a review of the facts and the incidental, rather than the main, questions of law,) is the only circumstance to give sufficient importance to the case to merit this extended consideration.

Upon the trial immediately preceding this one, witness Sinton was sworn and testified before the jury in regard to the facts and circumstances attending the destruction of the notes ; the payment thereon ; amount due, &c.

The question of fact, in accordance with the doctrine of the cases of *Page et al.* vs *Page* and *Garlock* vs. *Geortner*, were without instructions from the court, submitted to the jury, and, as I thought, fairly passed upon by them. If the law is correctly declared in the case of *Blade* vs. *Noland*, it is questionable whether the court should have permitted the case to go to the jury.

The supreme court reversed the judgment, as it appears, principally on the ground that the verdict, in favor of defendants, was, as they believed, the result of mistake, prejudice or corruption, and that this court should have granted a new trial. There having been no affidavit or allegation of misconduct on the part of the jury, on the motion for a new trial, as provided in the practice act, the attention of the court was not called to that matter : except so far as this—insufficiency of the evidence to justify the verdict.

Upon the present trial the defendant dispensed with the testimony of Mr. Sinton, and the case went to the jury upon an entirely different state of facts from those heretofore proven. The instructions to the jury were such as I thought it my duty to give, upon the case, submitted. They could not have taken the plaintiff by surprise ; for, by referring to the record of the preceding trial, it will be seen that plaintiff then rested his case without the testimony of Mr. Sinton and upon proofs similar to these, when a motion for nonsuit was made and, instead of being granted, plaintiff was allowed to introduce further testimony and Mr. Sinton was then sworn and examined.

The rulings of the court on the motion for a nonsuit, and the subsequent motion for a new trial, as appears by the statement and opinion

of the court on file, were, substantially the same as the instructions to the jury upon this trial. Instead of being erroneous, in my judgment, the charge to the jury was proper, and is sustained by precedent and authority. New trial denied.